NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICKI BLASUCCI,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:13-cv-05218 (WJM)<br><br>**REDACTED OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Vicki Blasucci brings this action pursuant to 42 U.S.C. §§ 405(g) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and Disability Benefits. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

I. **LEGAL STANDARDS**

A. **The Five-Step Sequential Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant was engaging in substantial activity during the relevant period. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any

1

impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity (or "RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II. BACKGROUND

Plaintiff, a sixty-two-year-old resident of Plainfield, New Jersey, seeks a finding of disability on the basis of impairments ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Administrative Transcript ("Tr.") 18. Plaintiff has a high school diploma and was previously employed as a hair dresser. Tr. 22.

On March 21, 2007, Plaintiff filed a Title II application for a period of disability and disability insurance, alleging disability as of December 31, 1997. Tr. 169-83 Plaintiff's application alleged that she could not work because she suffered from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Tr. 22. The ALJ denied Plaintiff's claim on October 29, 2009. Tr. 81-83. On December 29, 2009, Plaintiff requested that the Appeals Council review that decision. Tr. 130-34. On April 25, 2011 the

Appeals Council remanded the case back to the ALJ because the ALJ failed to take into account additional evidence concerning Plaintiff's medical condition, including a report from her treating physician. Tr. 90-91. After reviewing the additional evidence and holding another oral hearing, the ALJ issued a December 19, 2011 decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act and thus not entitled to disability insurance benefits ("DIB"). Tr. 19. The ALJ concluded that documentary medical reports, testimony from experts, and Plaintiff's own testimony demonstrated that Plaintiff's residual functional capacity ("RFC") would allow her to perform her prior job as a hair dresser. Tr. 20-27. Therefore, Plaintiff was not entitled to disability insurance benefits ("DIB"). The Appeals Council confirmed that decision on July 2, 2013. Tr. 1-4. Plaintiff now appeals.

### A. Summary of the Record

The record includes medical records from treating physician Dr. James Greenman, Ph.D., medical expert testimony from Dr. Martin Fechner, M.D., testimony from vocational expert ("VE") Patricia Sasona, and Plaintiff's own testimony.

In 2008, Plaintiff's treating physician, Dr. James Greenman, submitted a report indicating that Plaintiff was only capable of less than of sedentary work. Tr. 301-06. The report stated that Plaintiff was capable of standing and/or walking for no more than two hours per day and had limited ability to push or pull objects while working. *Id.* In addition to the 2008 report, the record consists of Dr. Greenman's "progress notes" on Plaintiff's medical condition. The progress reports noted that Plaintiff did not have any obvious infections, and that by 2005, Plaintiff had a healthy ▇▇▇. A 2005 progress report also noted that while Plaintiff did suffer from congestion, her lungs were clear. *See* Tr. 404. In 2006, Dr. Greenman noted that Plaintiff's acute pneumonia was clinically better and her ▇▇▇ remained in good control. Tr. 413. A 2007 report from a different physician indicated that Plaintiff had experienced "no chest pain and no shortness of breath along with no nausea, vomiting, diarrhea or constipation." However, the same report did indicate that Plaintiff suffered from sinus headaches and ankle swelling. Tr. 521. In 2009, Dr. Greenman reported that Plaintiff's ▇▇▇ under excellent control. Tr. 520.

In addition to reports from Plaintiff's treating physician, the record also contains testimony from Dr. Martin Fechner. Tr. 66. Dr. Fechner testified that Plaintiff's ▇▇▇ count was normal as of August 2009. He also testified that there was no evidence of major opportunistic infection ▇▇▇. Tr. 66-67.

Dr. Fechner also opined that Plaintiff was capable of standing or walking six hours in an eight-hour day. Tr. 70.

There was also VE testimony at the hearing. Tr. 73. The VE testified that someone of Plaintiff's age and background who had the RFC to perform light work would be able to perform Plaintiff's prior job as a hair stylist. Tr. 74.

Plaintiff also testified about her medical condition and overall wellness. Plaintiff testified that when she went to see her treating physician in 1997 she was suffering from side effects produced by her medications. Tr. 62. Specifically, she testified that in 1997 she experienced swelling in her extremities and suffered from dysmorphia, confusion, dizziness, and night sweats. Tr. 63. Plaintiff further testified that she continues to suffer from those side effects. Tr. 43. She also testified that she is able to independently shower, dress herself, take care of finances, and clean. Tr. 45-49.

### B. The ALJ's Decision

At step one, the ALJ found that Plaintiff did not engage in substantial activity during the relevant time period. Tr. 21. At step two, the ALJ concluded that Plaintiff had the following severe impairments: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The ALJ found the impairments to be "severe" under the Regulations "because a medical record supports a finding that they are medically determinable impairments which, when considered either individual or in unison, significantly limit the claimant's mental and physical abilities to do one or more basic work activities." Tr. 21.

At step three, the ALJ concluded that Plaintiff's impairments did not meet nor were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Specifically, the ALJ found that Plaintiff's infections were not accompanied by any of the impairments specified in listings 14.08 ▮▮▮ ▮▮▮▮▮ or 5.05 ▮▮▮▮▮▮▮▮. Tr. 21-22.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a hair stylist and thus was not entitled to DIB. Tr. 27. The ALJ supported her conclusion by finding that Plaintiff had the RFC to perform the demands of a full range of light work as defined in 20 C.F.R. 404. 1567(b), which meant Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently, standing or walking for 6 hours in an 8-hour work day, and performing unlimited pushing and pulling within the given weight restrictions. Tr. 22. The ALJ also found that Plaintiff did not possess mental impairments that have had

greater than a slight or minimal effect on her ability to perform basic work activities. Tr. 22. Moreover, the ALJ noted that according to VE testimony, a person of Claimant's age, background, and RFC would still retain the ability to perform her work as a hair stylist. Tr. 27.

The ALJ did consider the opinion from Plaintiff's treating physician, Dr. Greenman, who stated that Plaintiff was only capable of less than sedentary work, *i.e.*, she had limited pushing and pulling ability and was capable of standing or walking for less than two hours per-day. Tr. 301-06. However, the ALJ declined to give Dr. Greenman's opinion controlling or substantial weight for three primary reasons. *See* Tr. 25. First, the objective medical evidence – including Dr. Greenman's own progress reports – demonstrated that Plaintiff's infections are generally under control and that Plaintiff is in good health. Tr. 26. Second, in a 2008 Function Report, Plaintiff indicated that she was capable of partaking in various daily activities, including, *inter alia*, taking care of her cat, shopping for food, and occasionally cutting hair for neighbors and friends. *Id.* Finally, expert medical testimony from Dr. Fechner indicated that Claimant did not suffer from impairments that were severe enough to preclude her from doing light work. Tr. 26-27. In relying on Dr. Fechner's testimony, the ALJ noted that unlike Dr. Greenman – who may be sympathetic to Plaintiff and stood to gain if Plaintiff would continue to use him as her treating physician – Dr. Fechner had no apparent bias. Moreover, the ALJ concluded that Dr. Fechner's testimony was supported by the objective medical evidence. Tr. 27.

Having determined at step four that Plaintiff was capable of performing her previous occupation as a hair stylist, the ALJ concluded that Plaintiff was not entitled to DIB.

### III. DISCUSSION

Plaintiff challenges the ALJ's determination that she was not disabled as of December 31, 1997. Specifically, Plaintiff argues that the ALJ committed the following errors: (1) the ALJ improperly overruled the testimony of Plaintiff's treating physician; (2) Dr. Fechner was not qualified to testify as to Plaintiff's medical condition; and (3) the ALJ was biased. Each of these challenges will be addressed in turn.

#### A. Step Four: Overruling Dr. Greenman's Testimony

Plaintiff contends that the ALJ erred in overruling Dr. Greenman's opinion that Plaintiff is only capable of less than sedentary work. Specifically, Plaintiff

5

contends that the ALJ had no compelling reason for overruling Dr. Greenman's opinion. Instead, Plaintiff argues, the ALJ rested her conclusion on the suspicion that Dr. Greenman may be bias toward Plaintiff in part because he stood to gain if Plaintiff would continue to use him as her treating physician. The Court disagrees.

A treating source's opinion on the issues of the nature and severity of an individual's impairment must be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling (SSR) 96-2p; *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Moreover, "[a] treating source's medical opinion will not be entitled to controlling weight if substantial nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion." SSR 96-2.

Here the ALJ declined to give Dr. Greenman's opinion controlling weight for a variety of reasons. Most significantly, the ALJ concluded that Dr. Greenman's opinion was inconsistent with Plaintiff's medical records, including Dr. Greenman's own progress reports. Tr. 26. The record supports this conclusion: Plaintiff's medical reports indicate that while she may have suffered from impairment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, they were not overwhelmingly debilitating. *See e.g.* Tr. 377; 378; 379; 521.

The ALJ also declined to give Dr. Greenman's opinion controlling weight because it was inconsistent with a 2008 Function Report in which Plaintiff reported that she is able to perform a variety of daily functions, including caring for her cat, preparing her own meals, shopping in stores, and paying her bills. Tr. 26. Moreover, the ALJ noted that Dr. Greenman's opinion was inconsistent with the expert medical testimony of Dr. Fechner, who concluded that Plaintiff's impairments would not prevent her from performing light work. Tr. 27.

The ALJ's decision not to give Dr. Greenman's opinion controlling weight is therefore supported by substantial evidence on the record. Plaintiff inaccurately describes the ALJ's decision as solely resting on the observation that Dr. Greenman *may* be biased toward Plaintiff because he is her treating physician. However, the ALJ did not definitively conclude that Dr. Greenman was biased, and more importantly, her decision not to give Dr. Greenman's opinion controlling weight was reasonably premised on a multitude of other factors completely unrelated to any bias issues.

### B. Step Four: Dr. Fechner's Qualifications

Plaintiff also suggests that Dr. Fechner is unqualified to testify regarding Plaintiff's medical condition and thus the ALJ erred in adopting his opinion. Specifically, Plaintiff argues that Dr. Fechner is not qualified because he allegedly has admitted under oath that he does not treat ▉ patients and instead refers them to infectious disease specialists. The Court is not persuaded by this argument.

First, there is no indication from the record that Plaintiff objected to Dr. Fechner's qualifications at the hearing. Courts have previously refused to entertain arguments related to a medical expert's qualifications if a plaintiff failed to object to those qualifications at the hearing. *See Miller v. Barnhart*, No. 01-cv-0052, 2002 WL 32348504 (E.D. Pa. Jan. 31, 2002). Moreover, nothing on the record shows Dr. Fechner testifying that he refers ▉ patients to infectious disease specialists, and the Court declines to base its decision on extra-record assertions.

Even disregarding those points, the Court finds that the ALJ did not err by relying on Dr. Fechner's testimony. Consulting physicians for the Social Security Administration are deemed to be highly qualified experts in Social Security disability evaluation. *See* C.F.R. § 404.1527(e)(2)(i); *Milano v. Commissioner of Social Security*, 152 Fed.Appx. 166, 170 n. 7 (3d Cir. 2005); *Andrews v. Astrue*, No. 10-04932, 2011 WL 6756967 (D.N.J. Dec. 21, 2011). Therefore, Dr. Fechner was qualified to evaluate Plaintiff's disabled status for the purpose of Social Security, which is exactly what he did. Additionally, the ALJ noted that Dr. Fechner is a board-certified specialist in internal medicine, which rendered him qualified to provide an opinion on Plaintiff's overall medical condition. Tr. 26. The Court thus concludes that the ALJ did not err when it adopted Dr. Fechner's medical opinion.

### C. Alleged Bias of the ALJ

Plaintiff also suggests that the ALJ was biased against her. The Court disagrees. A Social Security claimant has the right to a fair hearing before an impartial ALJ. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, the Court will presume that the ALJ was not biased unless a plaintiff shows that there was a conflict of interest or some other specific reason for disqualification. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Moreover, the burden is on the plaintiff to overcome the presumption of impartiality. *Id.* at 196.

Plaintiff points to no specific facts that demonstrate bias on the part of the ALJ. Instead, Plaintiff alleges bias because the ALJ suggested that the testimony from Plaintiff's treating physician may not be entirely credible. As discussed previously, the record shows that the ALJ did not definitively conclude that

Plaintiff's treating physician was biased; instead the ALJ merely indicated that such bias was possible. More importantly, the record shows that the ALJ's determination was based on her review of medical records, expert testimony, and Plaintiff's own testimony – it was not a result of any bias against Plaintiff.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: August 3, 2016